■ ALBERT HONDARES, Respondent, v TSS-SEEDMAN'S STORES, INC., Appellant.—Order, Supreme Court, New York County (Bruce Wright, J.), entered March 7, 1988, which granted defendant's motion for summary judgment to the extent of dismissing plaintiff's claim for vacation pay, his fifth cause of action sounding in quantum meruit, and his claims for punitive damages, and otherwise denied defendant's motion, and granted plaintiff's cross motion for summary judgment as to liability on his breach of contract claim, and remanded the matter for a trial on the issue of damages, unanimously affirmed, without costs.

Plaintiff, who had been in defendant's employ since 1976 in various capacities, entered into a contract with defendant on May 1, 1985 to serve as executive vice-president-hard lines general merchandise administrator for a term of one year at a salary of $110,000, plus a bonus of $90,000, payable at the end of the term. The contract was a handwritten document drafted by George Seedman, defendant's chairman, and it defined plaintiff's responsibilities as follows: "All hard lines buyers will report directly to you * * * [and] be under your

control and responsibility. * * * All information re: hard lines merchandising conditions which require special action at our stores will be reported directly to you by executives in charge for proper processing. * * * The establishment of our hard lines retail prices at all our stores will be under your control".

Plaintiff performed these duties until October 8, 1985, when George Seedman appointed one C. Dean Stokes as "EXECUTIVE VICE PRESIDENT GENERAL MERCHANDISE MANAGER-HARDLINES DIVISION". The announcement of Stokes' appointment stated that "[a]ll Hardlines buyers will report directly to Dean". The announcement also reported on the appointment of plaintiff to the new position of "EXECUTIVE VICE PRESIDENT-HARDLINES MERCHANDISING COORDINATOR" "a much needed new Executive responsibility to develop a close inter-relationship through timely communication for action between our New York 'A' and 'B' Stores and our Hardlines Buying Staff. * * * Al will work in conjunction with Dean".

Shortly thereafter, plaintiff resigned from defendant's employ and accepted an executive position with another department store chain. When plaintiff left, he demanded payment of his vacation pay. In response to this demand, defendant issued a check to plaintiff in the amount of $2,064.68. A rubber stamp on the back of this check read "In Full Payment of all Compensation to Date of Termination". After being informed by defendant's vice-president that this stamp was "standard operating procedure" and would not affect his rights, plaintiff endorsed the check.

Thereafter, plaintiff commenced this action seeking to recover damages from the defendant, under various alternatively pleaded theories. In essence, the various causes of action in the complaint seek recovery for the balance of the salary and bonus due under the contract, unpaid vacation pay, and punitive damages. After issue was joined, defendant moved for summary judgment dismissing the complaint.

In a well-reasoned opinion, the IAS court granted defendant summary judgment only on the issues of vacation pay, punitive damages, and quantum meruit, and granted plaintiff's cross motion for summary judgment on his breach of contract claim on liability only. The court properly held that an employee who resigns for good cause, such as the employer's breach of the employment contract, is entitled to bring an action against the employer for a proportional part of the agreed-upon compensation, and that, in the instant case, plaintiff's reassignment to another position and assignment of

his duties to Stokes constituted a breach of contract, justifying plaintiff's resignation.

It was also properly determined that when plaintiff negotiated the check given to him in response to his demand for vacation pay, there was an accord and satisfaction with respect to his claim for vacation pay.

The court's dismissal of the punitive damages claim, as concededly unfounded, and the quantum meruit claim, as duplicative of the contract cause of action, are not contested on this appeal.

The law is clear that if an employee is under contract to fill a particular position, any material change in his duties or significant reduction in rank may be treated by the employee as a breach of the contract. (*E.g., Rudman v Cowles Communications,* 30 NY2d 1, 10; *Karas v H. R. Labs.,* 271 App Div 530, *affd* 297 NY 494.) Here, the uncontroverted documentary evidence established that plaintiff's duties were materially changed and his rank reduced. His contract expressly stated that all hard lines buyers would report to plaintiff. The Stokes announcement provided that all hard lines buyers were to report directly to Dean. In addition, plaintiff's contract established him as an executive in sole charge of buyers. The Stokes announcement made Stokes the executive in charge, and by stating that "Al [plaintiff] will work in conjunction with Dean", reduced plaintiff's rank as the sole executive in charge.

Defendant contends that there is an issue of fact as to whether the appointment of Stokes and reassignment of the plaintiff constituted a "demotion". However, there is no support in the record for this assertion, as defendant submitted no evidence to contradict the plain meaning of the announcement, which states that Stokes will assume certain of plaintiff's duties and that plaintiff will be working in "conjunction with Dean", thereby clearly connotating a "demotion". Moreover, even if the circumstances here are not termed a "demotion", the mere reassignment of duties expressly delineated in an employment contract constitutes a breach of the contract. *(See, e.g., Rudman v Cowles Communications, supra; Karas v H. R. Labs., supra.)*

Defendant also claims that there is an issue of fact as to whether plaintiff waived the breach of the employment contract by continuing to work at the job after August, when he first learned that Seedman was considering appointing Stokes. Although plaintiff admits that Seedman told him in August

that he was considering the possibility of his replacement, it should be noted that on this motion for summary judgment defendant has not come forward with evidence, by way of affidavit from Seedman or otherwise, as to the substance of that meeting nor as to any other facts which would establish that plaintiff's continued performance of his duties from August on constituted a waiver of his right to bring this action. In any event, there could be no waiver in August because the contract was not breached until Stokes was actually appointed, in October. Immediately after Stokes was appointed, the the record reveals that plaintiff sent out resumes, and that he resigned as soon as he obtained a new job. Accordingly, there is no factual basis in the record for a finding of waiver.

Finally, defendant argues that there is a question of fact as to whether plaintiff's acceptance of the final check constituted an accord and satisfaction settling his entire claim. As the IAS court correctly concluded, the acceptance of this check settled the vacation pay claim only. By defendant's own admission, this check representing nine days' pay was given to the plaintiff in response to his demand for vacation pay. It is clear, therefore, that plaintiff's negotiation of this check was an accord and satisfaction for vacation pay only and does not raise an issue of fact with respect to "accord and satisfaction" on his main contract claim. Concur—Kupferman, J. P., Ross, Milonas, Ellerin and Smith, JJ.